**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3050-15T2

V.A.Z.,

　　　　　Plaintiff-Respondent,

v.

J.M.W.,

　　　　　Defendant-Appellant.

_____

Submitted April 24, 2017 — Decided  May 2, 2017

Before Judges Nugent and Haas.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Gloucester
County, Docket No. FV-08-0779-16.

Jef Henninger, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

　　　Appellant J.M.W. appeals from a February 11, 2016 final restraining order ("FRO") entered in favor of respondent V.A.Z. pursuant to the Prevention of Domestic Violence Act of 1991 ("PDVA"), N.J.S.A. 2C:25-17 to -35.  We affirm.

We derive the following facts from the record. The parties had been living together for approximately ten months at the time of the incidents on January 26, 2016 that are the subject of this appeal. They also have a child, born in May 2015.

V.A.Z. testified that on January 26, 2016, she and J.M.W. had a verbal argument after he failed to feed the baby. V.A.Z. then went into a bedroom to watch television on an iPad. V.A.Z. stated that J.M.W. came into the room and grabbed the iPad away from her and accused her of texting another man. J.M.W. complained that V.A.Z. had deleted the internet history and pushed her against a wall. J.M.W. then went downstairs and took V.A.Z.'s car keys, license, and credit card to prevent her from leaving the home.

V.A.Z. saw J.M.W.'s cell phone on the bed, picked it up, and went downstairs. When J.M.W. saw V.A.Z. with the phone, he grabbed her by the hair and threw her against a wall to make her drop it. After letting go of the phone, V.A.Z. picked up J.M.W.'s PlayStation and told J.M.W. to give her a phone so she could call the police for help. When J.M.W. refused, V.A.Z. smashed the PlayStation with a hammer.

V.A.Z. testified that J.M.W. then grabbed her by both of her arms, threw her into a sliding glass door, and pushed her outside the house. She had no coat or shoes. V.A.Z. tried to find a neighbor or a passerby to help her, but soon returned to the house

and saw J.M.W. buckling the baby into a car seat. V.A.Z. asserted that she did not want J.M.W. taking the baby "in a rage state" and, therefore, she attempted to get inside by hitting the sliding glass door with a plastic snow shovel.

J.M.W. then let V.A.Z. into the house. She saw that J.M.W. had put the iPad on the kitchen table. V.A.Z. grabbed it and texted her father to call the police. She then threw the iPad so J.M.W. would chase it, unbuckled the baby from the car seat, and began taking the infant upstairs to a spare bedroom. V.A.Z. explained that the spare bedroom door was the only one with a lock because J.M.W. had previously broken every other door. As she went up the stairs, J.M.W. hit her in the back. V.A.Z. got to the spare bedroom, locked the door, and waited for the police.

V.A.Z. testified that her arms and back were "extremely red" from J.M.W. hitting her. After the police arrived, they arrested J.M.W.

V.A.Z. cited several other acts of domestic violence that occurred during the parties' relationship. V.A.Z. testified that J.M.W. frequently accused her of having relationships with other men and that he had broken several of her telephones, a laptop computer, and an iPad. When he was upset with her, J.M.W. would take away her driver's license and car keys to prevent her from leaving the house without his permission. V.A.Z. also asserted

that in December 2015, J.M.W. held her down on a bed and punched her repeatedly all over her body, causing multiple bruises.

J.M.W. testified that the parties were arguing over "something stupid." He asserted that V.A.Z. became upset because he was talking to her while he was on the phone. She then grabbed one of his phones and went through his messages while walking downstairs. J.M.W. followed her and asked for the phone back. V.A.Z. then threw the phone on the floor, picked up a hammer, and broke his PlayStation with a hammer.

J.M.W. admitted that he took V.A.Z.'s credit card, but stated that he did so because she had to pay for the broken game console. J.M.W. alleged that V.A.Z. then "stormed outside" the house and he locked the door behind her. He put the parties' baby in a car seat because he wanted to take the child to his parents' home.

When V.A.Z. hit the sliding glass door with the shovel, J.M.W. let her back in the house. He testified that V.A.Z. then hit him in the back with the shovel. He also claimed that V.A.Z. struck his head repeatedly with "open and closed fists." J.M.W. alleged that he grabbed V.A.Z.'s arms to try to stop her from hitting him. He stated that he also pushed her backwards and "[s]he just kind of backed up into" the sliding glass door.

J.M.W admitted that he had previously broken at least two of V.A.Z.'s electronic devices because he suspected she was using

them to contact other men. He denied previously breaking the doors in the house, and asserted that "[a]ll the doors upstairs were out of level, out of line[,]" and, therefore, he took the doors "off the[ir] hinges" so he could repair them at a future time. J.M.W. denied hitting or injuring V.A.Z.

In a thorough oral decision rendered on February 11, 2016, Judge Harold U. Johnson, Jr. found that V.A.Z.'s testimony concerning the incidents was credible, while J.M.W.'s claims were not. The judge explained that unlike J.M.W., V.A.Z. maintained eye contact with him, testified in a calm manner, and directly answered all questions posed to her. On the other hand, Judge Johnson observed that J.M.W. would not look at him when he gave his "most damaging answers" and, instead, looked down or away from him.

Judge Johnson concluded that J.M.W.'s actions constituted both assault under N.J.S.A. 2C:12-1, and harassment under N.J.S.A. 2C:33-4. The judge also found that V.A.Z. needed a FRO for her protection. The judge stated:

> I do find in regard to this matter that there is a need for a [FRO] in this particular case, without a doubt in my mind.
>
> Probably darn near clear and convincing evidence and approaching beyond a reasonable doubt, but clearly by a preponderance of the evidence in this particular case.

When you look at these individuals and their body language, facial expressions, demeanor and what have you in the courtroom, I believe [V.A.Z.]. I do not believe [J.M.W.].

I believe [V.A.Z.] needs protections from [J.M.W.] and I hereby enter a [FRO] on her behalf.

This appeal followed.

On appeal, J.M.W. contends that V.A.Z. failed to prove by a preponderance of the evidence that he committed any acts of domestic violence on January 26, 2016. J.M.W. also alleges that the trial judge erred in finding that a FRO was necessary to protect V.A.Z. from an immediate danger or to prevent further abuse. We disagree with these contentions.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

"Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108,

117 (1997)).  This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record."  N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (quoting D.Y.F.S. v. E.P., 196 N.J. 88, 104 (2008)).  A judge's purely legal decisions, however, are subject to our plenary review.  Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task.  Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).  The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates assault, N.J.S.A. 2C:12-1, and harassment, N.J.S.A. 2C:33-4, as conduct constituting domestic violence.  Id. at 125-26.  The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator."  Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); N.J.S.A. 2C:25-29(a)(1).

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the facts set forth in N.J.S.A. 2C:29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, supra, 387 N.J. Super. at 126-27). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)); see also Cesare, supra, 154 N.J. at 402.

Applying these standards to the arguments raised by J.M.W., we discern no basis for disturbing Judge Johnson's decision to grant a FRO to V.A.Z. The judge specifically found that V.A.Z.'s account of the January 26, 2016 incidents was credible and there is substantial credible evidence in the record to support that finding. Therefore, we affirm substantially for the reasons set forth in Judge Johnson's comprehensive oral opinion. We add the following brief comments.

The predicate act of assault is committed when a person "[a]ttempts to cause or purposely, knowingly or recklessly causes

bodily injury to another[.]" N.J.S.A. 2C:12-1(a)(1). "Bodily injury" is "physical pain, illness or any impairment of physical condition[.]" N.J.S.A. 2C:11-1(a); see also State v. Stull, 403 N.J. Super. 501, 505 (App. Div. 2008).

After making credibility findings, Judge Johnson properly applied the statute in concluding that J.M.W. assaulted V.A.Z. several times on January 26, 2016. J.M.W. grabbed V.A.Z. by the hair and threw her against a wall; grabbed both her arms and threw her into a sliding glass door; pushed her out of the door; and then hit her in the back after she re-entered the house. V.A.Z.'s arms and back were "extremely red" as the result of these attacks. Therefore, the judge correctly found that J.M.W. committed acts of domestic violence in violation of the PDVA.[1]

With regard to the second prong of Silver, Judge Johnson properly found that a FRO was necessary to protect V.A.Z., especially in view of J.M.W.'s past history of assaulting V.A.Z., breaking electronic devices, preventing her from leaving the house, and kicking in doors. Silver, supra, 387 N.J. Super. at 128. We perceive no basis to depart from the judge's findings.

---

[1] In light of our ruling that the trial judge's issuance of a FRO to V.A.Z. was fully supported under the assault statute, N.J.S.A. 2C:12-1, we need not address the judge's alternative ruling that J.M.W.'s conduct also constituted harassment under N.J.S.A. 2C:33-4.

Therefore, we affirm the judge's order granting V.A.Z. a FRO against J.M.W.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3050-15T2